36 P.3d 785 (1999)
The PEOPLE of the State of Colorado, Complainant,
v.
Richard Brian WIEDMAN, Respondent.
No. GC98A30.
Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.
February 11, 1999.

ORDER APPROVING STIPULATION, AGREEMENT, AND AFFIDAVIT CONTAINING WIEDMAN'S CONDITIONAL ADMISSION OF MISCONDUCT
This matter is before the court pursuant to C.R.C.P. 251.22(a) on the Stipulation, Agreement, and Affidavit Containing Wiedman's Conditional Admission of Misconduct ("Stipulation") filed January 28, 1999. The People ("complainant") are represented by James C. Coyle, Assistant Regulation Counsel. Respondent Richard Brian Wiedman ("Wiedman") is represented by Michael D. Gross. The People and Wiedman (collectively "the parties") and the complaining witness Mr. Thomas Reuter ("Reuter") waive their right to a hearing pursuant to C.R.C.P. 251.22(c). Being fully advised of the within matter, the court accepts and approves the Stipulation, which admits the following conduct and imposes the following sanctions:

I. JURISDICTION
Wiedman has taken and subscribed the oath of admission, was admitted to the bar of this court on October 25, 1989, and is registered as an attorney upon the official records of this court, registration no. 19037. Wiedman is subject to the jurisdiction of this court pursuant to C.R.C.P. 251.1(b).

*786 II. CHARGES

The complaint alleges that Wiedman's conduct establishes grounds for discipline as provided in C.R.C.P. 241.6,[1] and violates The Colorado Rules of Professional Conduct ("Colo.RPC") 1.4(a) (failure to respond to reasonable requests for information); Colo. RPC 1.15(a) (failure to hold client funds in trust); Colo. RPC 1.15(b) (failure to timely and accurately account for payments received on client's behalf); Colo. RPC 1.16(d) (failure to return client files); Colo. RPC 8.4(a) (violation of a rule of professional conduct) and Colo. RPC 8.4(c) (engaging in conduct involving fraud, dishonesty, deceit or misrepresentation).

III. FINDINGS OF FACT
With respect to the allegations contained in the complaint, Wiedman affirms under oath that the following facts and conclusions are true and correct. Between 1992 and 1995, Wiedman represented Frontier Radio Communications ("Frontier") in collection matters. He also handled an employee embezzlement matter on behalf of Frontier involving Kathleen Kelley ("Kelley") which settled by stipulation on May 2, 1995. The stipulation provided that Kelley make payments to Frontier, in care of Wiedman, in the amount of $500 per month for a period of one year, increasing to $600 per month in June 1996 for a period of one year, and increasing to $700 per month in June of 1997.
Kelley made timely payments under the stipulation to Wiedman totaling $11,900 through February 1997. The majority of payments from May 1995 through February 1997 were deposited into Wiedman's trust, operating or personal account. In the meantime, in June 1995, Greg Noble ("Noble"), Frontier's controller, wrote to Wiedman asking for an accounting on the Kelley funds. Wiedman failed to respond. From May through December 1995, Wiedman collected $4,000 on behalf of Frontier. Wiedman paid Frontier $500 in June and $2,500 in November 1995, for a total of $3,000 in 1995, failing to forward the balance of $1,000 to Frontier in 1995. On January 23, 1996, Noble wrote to Wiedman stating that a full-time collection attorney had been hired by Frontier and that Wiedman's services were terminated. Noble requested all files, and asked that Wiedman notify Kelley to send her payments to Frontier's lock box rather than Wiedman. Noble again requested an accounting of Kelley's funds. Wiedman sent a note dated February 6, 1996, which stated that the files would be forwarded shortly. Wiedman did not otherwise respond to Noble's request or notify Kelley to forward the payments to Frontier.
On February 21 and 29, 1996, Wiedman deposited a total of $1,000 in Kelley funds into his law office operating account. These funds were commingled with Wiedman's personal funds. On March 28, 1996, Wiedman met with Tom Reuter ("Reuter"), president of Frontier, and gave him a check for $1,500 regarding Kelley's payments for the months January, February and March 1996. On May 28, 1996, Reuter wrote to Wiedman renewing the same request for files and an accounting of Kelley's payments, and for a copy of the notification that Kelley send her payments to Frontier. Respondent, however, failed to notify Kelley that she needed to forward her payments to Frontier; thus Kelley continued to send payments directly to Wiedman. On June 24, 1996, Wiedman deposited $1,600 representing Kelley's April, May and June 1996 payments to his law office trust account. On or about July 1, 1996, Wiedman paid Frontier $1,600. On July 10, 1996, Wiedman deposited $500 into his law office operating account. On July 11, 1996, approximately five months after being requested to do so, Wiedman sent a letter to Kelley requesting her to send all future payments to Reuter and directing Kelley to forward the payments to Frontier's office address instead of the company's lock box as requested by Noble in January 1996. On July 23, 1996, Reuter again wrote to Wiedman requesting that Wiedman notify Kelley to forward the payments to Frontier's lock box and requested an accounting. Wiedman failed to respond. On July 30, 1996, Wiedman deposited $600 of Kelley funds into his personal bank account. At the time of the deposit, Wiedman took $200 as a "cash back" *787 withdrawal from the $600 transaction leaving a total deposit to Wiedman's personal account in the amount of $400. By August 7, 1996, the balance in Wiedman's law office operating account was overdrawn by $105.44. By September 13, 1996, the balance in Wiedman's personal account was overdrawn by $56.37. On October 3, 1996, Wiedman deposited $600 into his personal bank account. At the time of the deposit, Wiedman took $50 as a "cash back" withdrawal from the $600 transaction leaving a total deposit to Wiedman's personal account in the amount of $550. Additionally, at the time of the deposit, Wiedman's balance in his personal account was overdrawn by $126.39. Part of the Kelley funds were applied to pay Wiedman's overdraft and non-sufficient funds charges. On October 7, 1996, Reuter again wrote to Wiedman requesting, among other things, an accounting of Kelley's funds. Again, Wiedman failed to respond. By October 16, 1996, the balance in Wiedman's account was $44.21.
Frontier then retained attorney John Haas ("Haas") to deal with Wiedman. On November 15, 1996, Haas wrote to Wiedman by certified mail again listing Frontier's requests. On December 3, 1996, Wiedman spoke to Haas and assured him that the Kelley funds and an accounting would be sent that week and the files shortly thereafter. On December 12, 1996, Wiedman faxed over the Kelley court records, but took no further action. On December 17, 1996, Haas again wrote Wiedman and again requested further action. On December 22, 1996, Haas spoke to Wiedman who again promised an accounting and return of funds by January 3, 1997. Wiedman failed to comply.
From January through December 1996, Wiedman collected approximately $6,700 from Kelley. Wiedman paid Frontier $1,500 in April and $1,600 in July 1996, for a total of $3,100 paid to Frontier in 1996. Wiedman did not forward the balance in the amount of $3,600 to Frontier in 1996. On January 3, 1997, Haas wrote Wiedman a letter giving him until January 6, 1997, to produce an accounting and the funds in the Kelley matter. Wiedman failed to comply. On January 3, 1997, Wiedman deposited $1,600 in Kelley funds into his law office trust account. At the time of the deposit, the balance in Wiedman's trust account was overdrawn by $404.80. The bank automatically deducted $404.80 from the Kelley deposit to reimburse the bank for Wiedman's overdrawn balance. On February 2, 1997, Wiedman forwarded $1,200 to Frontier. On February 4, 1997, Wiedman deposited $600 in Kelley funds into his law office trust account. Wiedman failed to forward this payment to Frontier. From January through February 1997, Wiedman deposited a total of $2,200 in Kelley funds into his trust account. Wiedman paid only $1,200 to Frontier in February 1997 leaving a balance due of $1,000 to Frontier for 1997. As of March 5, 1997, the balance in Wiedman's trust account was $593.30. On or about February 7, 1997, Reuter filed a request for investigation against Wiedman. On or about November 10, 1997, some time after the request for investigation had been filed, Wiedman forwarded $4,000 to Frontier.
From 1995 through 1997, Wiedman collected a total of $11,900 from Kelley. Of that amount, Wiedman paid Frontier $11,300 (this amount includes $4,000 restitution paid after the request for investigation had been filed) leaving a shortfall in the amount paid of $600. On January 13, 1999, Wiedman paid the $600 balance due Frontier.
Funds that Wiedman placed into his trust account from Kelley's money orders were in part negligently misappropriated to his own use. Those funds placed into Wiedman's operating or personal account from Kelley were also in part negligently misappropriated and commingled with Wiedman's own personal funds. The total amount of misappropriated funds was approximately $3000.
Complainant concedes it cannot prove by clear and convincing evidence that any of Wiedman's misappropriations were knowing. In 1996, Wiedman wrote numerous checks from his law office trust account for personal or business expenses. At the time these checks were written, Wiedman maintained client, business and personal funds in his trust account. Wiedman commingled his personal and business funds with those funds belonging to his clients. Wiedman negligently misappropriated client funds to his own use, commingled personal funds with those *788 belonging to clients, failed to comply with reasonable requests for information from the client, failed to timely and accurately account for payments received on the client's behalf, and failed to return client's files.

IV. CONCLUSIONS OF LAW
Wiedman's conduct set forth above establishes grounds for discipline as provided in C.R.C.P. 251.5, and violates Colo. RPC 1.4(a) (failure to respond to reasonable requests for information); Colo. RPC 1.15(a) (failure to hold client funds in trust); Colo. RPC 1.15(b) (failure to timely and accurately account for payments received on client's behalf); Colo. RPC 1.16(d) (failure to return client files); and Colo. RPC 8.4(a) (violation of a rule of professional conduct). The court finds by clear and convincing evidence that Wiedman's conduct constitutes a violation of the aforesaid rules of civil procedure and The Colorado Rules of Professional Conduct. The parties stipulate to and the court approves the dismissal of complainant's charges against Wiedman pursuant to Colo. RPC 8.4(c).
A lawyer's knowing misappropriation of funds, whether belonging to a client or a third party, warrants disbarment except in the presence of extraordinary factors in mitigation. See People v. Skaalerud, 963 P.2d 341, 344 (Colo.1998); People v. Hindman, 958 P.2d 463, 464 (Colo.1998). See also People v. Varallo, 913 P.2d 1, 11 (Colo.1996). Because disbarment is the most severe sanction, however, it must be established by clear and convincing evidence that the misappropriation of client funds was knowing and not merely negligent. id. The Court in Varallo defined a negligent or technical misappropriation as:
". . . a conversion or misappropriation where the complainant either concedes that the misappropriation was negligent," People v. Dickinson, 903 P.2d 1132, 1138 (Colo.1995), or it cannot be proven by clear and convincing evidence that the respondent knowingly converted the funds, People v. Galindo, 884 P.2d 1109, 1112 (Colo. 1994) (board's conclusion that conversion was negligent rather than knowing was supported by the record and would not be overturned); People v. Wechsler, 884 P.2d 217, 220-21 (Colo.1993) (supreme court will not overturn hearing board's conclusion that intentional conversion was not established by clear and convincing evidence unless there is no substantial evidence in the record to support conclusion); People v. McGrath, 780 P.2d [492] (Colo.1989) ("Indeed, if there were not some lingering doubt about whether Wiedman engaged in knowing conversion of his client's funds, we would have no hesitation in entering an order of disbarment."). id. at 11. (italics in original).
". . . For example, depositing client funds into a trust account with a negative balance, if done only negligently, would be a technical rather than knowing conversion of client funds." . . . id. at 11.
The complainant concedes that, in this matter, the misappropriation was negligent. Thus, a significant period of suspension is appropriate rather than disbarment.
The parties stipulate to the following factors in aggravation, pursuant to the ABA Standards for Imposing Lawyer Sanctions (1991 & Supp.1992) ("ABA Standards"): a pattern of misconduct, id. at 9.22(c); multiple offenses, id. at 9.22(d); and substantial experience in the practice of law, id. at 9.22(i). The parties further stipulate to the following factors in mitigation: absence of a prior disciplinary record, id. at 9.32(a); personal and emotional problems, id. at 9.32(c); mental disability, id. at 9.32(i); and remorse, id. at 9.32(l).

V. IMPOSITION OF DISCIPLINE/SANCTIONS
Given the seriousness of the misconduct and taking into account the aggravating and mitigating factors, the court finds that the sanction agreed upon by the parties  a three-year suspension  is appropriate. Furthermore, the court Orders that as a condition of reinstatement, Wiedman must demonstrate that there are no medical or psychological bases, including depression, that impair his abilities to fulfill all his responsibilities as an attorney. The court further Orders that upon reinstatement, Wiedman must comply with the financial, legal *789 and psychiatric monitoring requirements as set forth in the following paragraphs of the stipulation.
1. Upon reinstatement to the practice of law, the following conditions involving financial monitoring shall be placed into effect:
a. Wiedman will maintain the following minimum records as to all bank accounts instituted or utilized by Wiedman in any fashion whatsoever in the practice of law.
1. A separate bank account or accounts and, if utilized, a separate savings and loan association account or accounts, located in Colorado, in the name of the lawyer or law firm and clearly labeled and designated as "trust account."
2. Original or duplicate deposit slips and, in the case of currency or coin, an additional cash receipts book, clearly identifying:
(a) the date and source of all trust funds received;
(b) The client or matter for which the funds were received.
3. Original cancelled checks, all of which must be numbered consecutively.
4. Other documentary support for all disbursements and transfers from the trust account.
5. A separate cash receipts and disbursements journal, including columns for receipts, disbursements, transfers, and the account balance, and containing at least:
(a) The identification of the client or matter for which the funds were received, disbursed, or transferred;
(b) The date on which all trust funds were received, disbursed, or transferred;
(c) The check number for all disbursements;
(d) The reason for which all trust funds were received, disbursed, or transferred.
6. A separate file or ledger with an individual card or page for each client or matter showing all individual receipts, disbursements, or transfers and any unexpended balance and containing:
(a) The identification of the client or the matter for which trust funds were received, disbursed, or transferred;
(b) The date on which all trust funds were received, disbursed, or transferred;
(c) The check number for all disbursements;
(d) The reason for which all trust funds were received, disbursed, or transferred.
7. All bank or savings and loan association statements for all trust accounts.
b. Wiedman will perform the following trust-accounting procedures:
1. Wiedman shall cause to be made monthly:
(a) Reconciliation of all trust bank or savings and loan association accounts, disclosing the balance per bank, deposits in transit, outstanding checks identified by date and check number, and other items necessary to reconcile the balance per bank with the balance per the checkbook and the case receipts and disbursements journal;
(b) A comparison between the total of the reconciled balances of all trust accounts and the total of the trust ledger cards or pages, together with specific descriptions of any differences between the two totals and reasons therefor.
2. At least annually, a detailed listing identifying the balance of the unexpended trust money held for each client or matter.
3. The above reconciliations, comparisons, and listing shall be retained for at least six years.
c. Wiedman shall direct any bank or savings and loan association where Wiedman is a signatory on any bank account utilized in the practice of law to notify the Office of Attorney Regulation, 600 17th Street, Suite 200-South, *790 Denver, Colorado 80202, in the event any law firm or trust account check is returned due to insufficient funds or uncollected funds, absent bank error. Further, if any such check is returned, Wiedman shall, likewise, notify the Office of Attorney Regulation.
d. Wiedman shall file a written report with the Office of Attorney Regulation each year for a period of three years beginning one year from the date of the reinstatement order regarding the satisfactory maintenance of the financial aspect to respondent's law practice and demonstrating respondent's compliance with the conditions set forth above. The said report shall contain the certificate of a certified public accountant verifying that the procedures set forth above were followed and that an audit demonstrated no irregularities in the handling of the trust accounts. Said audit and report shall be conducted and complied with at respondent's sole expense.
2. An attorney approved by the Office of the Attorney Regulation shall review Wiedman's legal files and method of handling respondent's case load for a period of two years following Wiedman's reinstatement the practice of law. The review procedure shall be as follows:
a. Wiedman shall demonstrate the existence of a workable reminder, or "tickler" system, and proof of a dual calendar system, or comparable case monitoring system, in respondent's office to the Office of Attorney Regulation within ninety (90) days of any order of reinstatement and shall, by the reports of the monitoring attorney, demonstrate that both the reminder system and the dual calendar system, or comparable case-monitoring system, is in existence and operating effectively.
b. A case-load review meeting shall take place between the monitoring attorney and Wiedman on this schedule:
(1) First six months: meeting once per month;
(2) Second six months: meeting every other month;
(3) Second year: meeting quarterly.
c. At each meeting the following will take place:
(1) Wiedman will prepare a list of current, active files, which files will be reviewed by the monitoring attorney, together with Wiedman. The monitoring attorney will take steps to verify that the list is complete.
(2) The monitoring attorney will make, and Wiedman will write down, specific suggestions necessary to assure that the case load is being properly and professionally handled and that Wiedman is progressing in a satisfactory manner following respondent's reinstatement.
(3) The monitoring attorney and Wiedman will review the list of suggestions from the previous meeting to be sure that all suggestions for improvement have been implemented and that Wiedman has complied with them.
(4) The monitoring attorney shall have access to and monitor, to the extent he deems necessary, all financial accounts of Wiedman, including personal accounts, in order to assure that no commingling of funds occurs.
d. Within ten (10) days following each meeting, Wiedman shall submit to the Office of Attorney Regulation a written report of the meeting, which report shall be signed by the monitoring attorney.
e. The monitoring attorney shall immediately disclose to the Office of Attorney Regulation, 600 17th Street, Suite 200-South, Denver, Colorado 80202, any matters which are uncorrected or which represent significant problems requiring corrective attention. Copies of such correspondence shall be sent to Wiedman.
3. A mental health professional approved by the Office of Attorney Regulation shall monitor respondent's psychiatric and emotional *791 adjustment to the practice of law for a period of two years.
a. During the first six months, Wiedman shall meet with the mental health professional no less often than once every thirty (30) days, the first meeting to be within thirty (30) days of the order of reinstatement entered in this matter. Thereafter, Wiedman shall meet with the mental health professional no less often than once every three months.
b. At the discretion of the mental health professional and upon notice to the Office of Attorney Regulation, respondent shall be required to meet at more frequent intervals should the then existing facts so warrant in the sole judgment of the mental health professional.
c. Within ten days following each such meeting, Wiedman shall submit to the Office of Attorney Regulation a written report of the meeting, which report shall be signed by the mental health professional.
d. The mental health professional shall immediately disclose to the Office of Attorney Regulation, 600 17th Street, Suite 200 South, Denver, Colorado 80202, any adverse data which in any fashion might effect respondent's ability to practice law in accordance with the Rules of Professional Conduct or the requirements of this recommendation.
e. Wiedman shall execute a written authorization to release medical information and deliver the same forthwith upon reinstatement to the mental health professional to expedite the reporting requirements set forth herein.
4. Wiedman agrees that failure to comply with the conditions set forth above, including failure to make timely reports as hereinabove described, shall be cause for immediate suspension of his license to practice law pursuant to the procedures of C.R.C.P. 251.8, notwithstanding those causes listed in C.R.C.P. 251.8.

VI. ORDER AND IMPOSITION OF DISCIPLINE
It is therefore ORDERED that Richard Brian Wiedman is suspended from the practice of law for three (3) years commencing thirty-one (31) days from the entry of this Order. Prior to reinstatement, Wiedman must comply with the provisions of C.R.C.P. 251.29(b) through (d) and demonstrate that there are no medical or psychological bases, including depression, that actually impair his abilities to fulfill all of his responsibilities as a lawyer. Upon reinstatement, Wiedman must comply with all conditions described in subsection V of this Order.
IT IS FURTHER ORDERED that Wiedman shall pay all costs and expenses incurred in conjunction with GC98A30 within thirty (30) days of the court's approval of an itemization of costs and expenses. Regulation Counsel submitted an itemization of costs and expenses incurred in conjunction with GC98A30 on January 21, 1999. Respondent may file a Response to complainant's itemization of costs and expenses within ten (10) days of this Order.
NOTES
[1] Repealed effective January 1, 1999 and replaced by C.R.C.P. 251.5.